J-A10044-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF: GEORGIOS LOLOSIDIS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: ANGELIKI GINOS | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 797 EDA 2025 |
| | : | |

Appeal from the Order Entered February 13, 2025
In the Court of Common Pleas of Delaware County Orphans' Court at
No(s):  0767-2023-O

BEFORE:   STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JULY 20, 2026**

Angeliki Ginos appeals from the orphans' court's February 13, 2025 order denying her petition for accounting, for turnover of Estate property, and for surcharge on the basis it was barred by the two-year statute of limitations under 42 Pa.C.S.A § 5524.  After careful review, we affirm.

The trial court summarized the relevant facts of this case, as gleaned from the February 28, 2024 hearing transcript, as follows:

> George Lolosidis (Decedent) died on June 15, 2016. Prior to his death, Decedent and his agent Athanasia Papatzikas (Appellee) sold the property located at 177 West Girard Avenue, Philadelphia Pennsylvania 19123 on May 7, 2014 (the Property). The proceeds of the sale were then deposited into a joint bank account held between Appellee and Decedent. Appellee was

_____

[*] Former Justice specially assigned to the Superior Court.

named as limited power of attorney over this sale of real estate by Decedent.

Attorney Rebecca Rosenberger Smolen (Attorney Smolen) testified that she was retained by Appellant to represent Appellant on a matter involving her sister, Appellee, as to not turning over money to their father, Decedent, before he died and then after he died, refusing to turn it over to her representative of the estate in a legal process in Greece. Attorney Smolen testified that her understanding was that Decedent lived in the U.S. for quite a long time, that he'd worked here, and he went back home to Greece before he died. Attorney Smolen testified that it was her understanding that Decedent had demanded Appellee turn over the money "many, many times" but Appellee refused.

Attorney Smolen testified that she wrote and sent a letter to Appellee on February 22, 2017. Attorney Smolen testified that in that letter, she demanded Appellee return the money and provide an accounting for it within 20 days. Attorney Smolen testified that her letter stated that if the matter could not be resolved outside of court, "we would have to go to court." The letter, admitted as P-4, states in part the following:

> I hope you will promptly cooperate with this demand as a moral matter between you and your sister without the need for any formal legal action. However, if you fail to do so, you will leave (Appellant) with no choice but to pursue this matter in the local courts. Should you impose this burden on [Appellant], she intends to Petition the Delaware County Orphans' Court to assess a significant surcharge against you for your breach of fiduciary duty to your father and to her, and she will explore the possibility of bringing criminal charges against you as well.

Appellee's attorney Harry Karapalides (Attorney Karapalides) would then reply to this letter on February 24, 2017. In the letter, admitted as P-5,

- 2 -

Attorney Karapalides advised Attorney Smolen of a contest to Decedent's Will occurring in Greece, and his belief that Appellant's demands and the letter written on February 22, 2017 were "premature." Attorney Karapalides stated that there should be no action filed with the Orphans' Court in Delaware County until the decision of the Greek court was made regarding the validity of Decedent's Will. Attorney Karapalides advised that should any filing be made in the Orphans' Court, Appellee would inform the Orphans' Court of the Greek action and "will most certainly stay your action pending the Greek Court decision." Attorney Karapalides stated in his letter that he would demand reimbursement of all fees, including attorney's fees because of his belief that any filing was premature. Lastly, Attorney Karapalides advised that Appellee would be willing to work to resolve the matter, but that it was "a two-way street." Specifically, Attorney Karapalides requested that Appellant "must also 'come clean' and inform [Attorney Smolen] of all monies and/or properties she received, provide an accounting of all assets and distributions that she made, and wait for the decision by the Greek Court."

Attorney Smolen testified that she believed that Attorney Karapalides was saying "hold your horses," which she testified that she had to consider due to the cost of proceeding in both the Greek Court and in the Delaware County Orphans' Court. Attorney Smolen testified that her opinion at the time was that they could proceed to dot their I's and cross their T's, but it would be risky in terms of the cost, because they might have to pay the other side's fees, and it may be for nothing if they could resolve amicably after the Will contest. Attorney Smolen testified that she was unaware that the money from the sale of the Property had been placed into a joint account between Appellee and Decedent until the answer to the petition had been filed.

On Cross Examination, Attorney Smolen stated that she told Attorney Karapalides that Attorney Smolen's agent would not provide an accounting because his client was not entitled to one. Attorney Smolen then

- 3 -

testified that she and Appellant were proceeding under a power of attorney duty to account for Attorney Karapalides' client. Attorney Smolen then testified that the idea of waiting for the Greek Court's decision was Attorney Karapalides' opinion, not her opinion, and that she did not have to agree with Mr. Karapalides. It was a choice. Attorney Smolen testified that she believed it was reasonable to wait in her view as a legal matter.

Attorney Karapalides testified that he did say to Attorney Smolen there shouldn't be an action filed in the Orphans' Court until the will contest was decided. Attorney Karapalides testified that Attorney Smolen and her client could have filed anything they wanted to. On Cross Examination, Attorney Karapalides testified that Decedent's name was on the check written for the sale of the Property. Attorney Karapalides testified that the only place that could be deposited is in a bank account with his name on it. Attorney Karapalides testified that the sale occurred two years and one month before Decedent died. Mr. Karapalides testified that he was never hired by Decedent to file anything against Appellee or Appellant to regain assets. Attorney Karapalides testified that Decedent never hired him to have Appellee file a petition for an accounting. Attorney Karapalides testified that he never received any other correspondence or anything after the April 11th, 2017 email, which is P-7. Attorney Karapalides testified that he figured that Attorney Smolen was not going to file anything in Delaware County. Attorney Karapalides testified that whenever you agree to something such as extending time or anything, that we would put it in writing, whether it's a conformation transmittal letter or a stipulation, and in this case, it's a statute being tolled, we'd put it in writing through a stipulation. Nothing was done after April 11th, 2017."

Trial court opinion, 7/2/25 (dated 6/1/25) at 2-5 (citations omitted).

The trial court set forth the relevant procedural history of this case as follows:

- 4 -

On December 12, 2023, Appellant filed [a] petition for accounting, for turnover of Estate property, and for surcharge. A hearing was scheduled for January 31, 2024, which was rescheduled to February 28, 2024. After the hearing, the case was then scheduled for September 2024 trial term. Discovery was granted, and on August 26, 2024, a motion to enforce subpoena and for sanctions was filed by Appellant, though this would be withdrawn on September 17, 2024. In addition, the trial was moved from the September 2024 trial term to the February 2025 trial term. On February 12, 2025, the trial was held in which Appellant's petition was denied pursuant to 42 Pa.C.S.A § 5524. On March 13, 2025, Appellant filed her notice of appeal.

*Id.* at 1-2 (extraneous capitalization omitted).[1]

Appellant raises the following issues for our review:

1. Whether the Orphans' Court erred as a matter of law by applying the civil 2 year statute of limitations of 42 Pa.C.S.A. § 5524 to the within Orphans' Court equitable action which involves breaches of fiduciary duty by an agent under a power of attorney, instead of following the directly controlling precedent of *In Re: Estate of Leonard J. Moskowitz*, [115 A.3d 372 (Pa.Super. 2015), *appeal denied*, 130 A.3d 1291 (Pa. 2015] ("*Moskowitz I*") and *In Re: Estate of Moskowitz*, [2017 WL 2645011 (Pa.Super. 2017) (non-precedential decision)] ("*Moskowitz II*"), holding that the equitable doctrine of laches applies to matters like the within action where an agent acting under a power of attorney transfers assets of the principal to a joint account making the agent a record joint owner of the principal's assets[?]

2. Assuming, *arguendo*, that the 2 year statute of limitations of 42 Pa.C.S.A. § 5524 applies to the

_____

[1] Appellant and the trial court have complied with Pa.R.A.P. 1925.

within matter, whether the Orphans' Court erred by disregarding that any such statute would have been tolled:

a. because the agent concealed that she had transferred the principal's assets to a joint account until after Appellant had filed her petition in the within matter;

b. because the agent represented through counsel after the death of the principal that she still retained the principal's assets in an agency capacity and would continue to hold them in that capacity until a Will Contest in Greece was resolved which resulted in detrimental reliance by Appellant and should equitably estop the agent from now denying the responsibility to turn over principal's assets; and

c. the within action was promptly commenced within six (6) months of the resolution of the Will Contest in Greece after the agent continued to refuse to turn over the principal's assets to the Appellant as the sole beneficiary of the principal's estate as a decedent.

3. Whether the Orphans' Court erred as a matter of law by allowing an agent, who clearly breached her fiduciary duties to the principal (and to the Appellant as the single beneficiary of the principal's estate after his death) by commingling principal's assets with her own in a joint account, to retain those wrongfully commingled assets?

4. Whether the Orphans' Court erred by disregarding the agent's breach of fiduciary duty and breach of contract under the explicit written terms of power of attorney which prohibited agent from controlling the disposition of any of principal's remaining assets upon his death and required that any of principal's assets held "in

trust" be returned to his estate at the time of his death?

5. Whether the Orphans' Court erred by failing to award summary judgment in favor of Appellant for turnover of $120,000 of principal's assets retained by agent considering that the within action was filed within six (6) months of the date that the Will Contest in Greece was resolved in favor of Appellant and against the agent and their one other sibling and the principles of equitable estoppel and detrimental reliance would preclude agent from claiming right to assets as surviving joint tenant?

6. Whether the Orphans' Court erred by failing to consider and award sanctions for legal fees and legal interest against agent and in favor of Appellant?

Appellant's brief at 3-6 (citation formatting amended).

Our standard of review of an orphans' court's decision is well settled:

When an appellant challenges a decree entered by the orphans' court, our standard of review requires that we be deferential to the findings of the orphans' court.

We must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*Estate of J.L.C.*, 321 A.3d 999, 1003 (Pa.Super. 2024) (citation and brackets omitted).

Preliminarily, we note that Appellant waived his claim with regard to the doctrine of laches by failing to raise this claim before or during trial. *See* Pa.R.A.P. 302(a) ("[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"). Our Supreme Court has recognized that,

> a Rule 1925(b) statement cannot resurrect an otherwise untimely claim or objection. Because issues not raised in the lower court are waived and cannot be raised for the first time on appeal, a 1925(b) statement can therefore never be used to raise a claim in the first instance. Pennsylvania law is clear that claims and objections that are not timely made are waived.

*Steiner v. Markel*, 968 A.2d 1253, 1257 (Pa. 2009) (citations omitted).

Turning to Appellants' remaining claims, we discern no error on the part of the trial court in concluding that Appellant's petition was barred by the two-year statute of limitations under 42 Pa.C.S.A § 5524. The trial court addressed each of Appellant's allegations of error in this regard in its comprehensive, 17-page opinion and concluded that they are without merit. Following our thorough review of the record, including the briefs of the parties, we find that the trial court's conclusions are supported by competent evidence and are consistent with applicable law.

Accordingly, we adopt the relevant portions of the well-reasoned opinion of the Honorable Kathrynann W. Durham as our own for purposes of this appellate review. *See* trial court opinion, 7/2/25 (dated 6/1/25) at 6-16. We

hereby direct the parties to attach the trial court opinion to this Memorandum in all future proceedings.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/20/2026